# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| L. B. BENON FAMILY LIMITED PARTNERSHIP, BENON MARITAL TRUST, HASSON FAMILY TRUST, GREENS FAMILY LIMITED PARTNERSHIP, *Plaintiff* § § § § § § § § v. § § WELLS FARGO BANK, N.A., N.F. MGT., INC., TEXAS NAME MERCANTILE INVESTMENT, LLC, *Defendants*. § § § § § | Case No.  SA-21-CA-01115-XR |

## ORDER

On this date, the Court considered Defendants' motion to dismiss Plaintiffs' second amended complaint (ECF No. 32), Plaintiffs' response (ECF No. 33), and Defendants' reply (ECF No. 36). After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiffs L.B. Benon Family Limited Partnership, Benon Marital Trust, Hasson Family Trust, and Greens Family Limited Partnership (collectively, "Plaintiffs") allege that Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), N.F. Mgt., Inc. ("N.F. Mgt."), and Texas Name Mercantile Investment, LLC ("Texas Name") breached their contractual and fiduciary duties in the maintenance of The Mercantile Building (the "Building"), a commercial condominium project located at 40 NE Loop 410, San Antonio, Texas. ECF No. 32 at 1.

Together, Plaintiffs and Texas Name own 100% of The Mercantile Building. *Id*. at 2. Plaintiffs own Unit 1 of the Building, which they lease to Defendant Wells Fargo. *Id*. Defendant Texas Name owns the remaining Units (2-7) in the Building. *See* ECF No. 30 at 127 (Ex. D

"Written Consent"). Defendant N.F. Mgt. serves as the property manager of The Mercantile Building under a Property Management Agreement between Texas Name and N.F. Mgt. *Id*. at 7.

Texas Name was authorized to enter into the Property Management Agreement on behalf of the owners of the Building by a Unanimous Written Consent of the Council of Co-Owners of the Condominium Project (the "Written Consent"), executed by Plaintiffs and Texas Name's predecessor-in-interest, Texas Name, Ltd., on June 13, 2014. *Id*. The Written Consent elected four representatives to the Board of Directors of the Condominium. Plaintiffs, as the owners of Unit 1, designated one representative, and Texas Name, Ltd., as the owner of the remaining six units in the Building, designated three representatives. ECF No. 30 at 127 (Ex. D "Written Consent"). The Written Consent indicated that the co-owners desired to engage N.F. Mgt. to serve as Building's property manager and adopted the Property Management Agreement in all respects. *Id*. at 127–28. It authorized any of Texas Name's representatives on the Board of Directors to enter into the Property Management Agreement with N.F. Mgt. *Id.* at 128.

As authorized by the Written Consent, Texas Name entered into the Property Management Agreement with N.F. Mgt., to manage The Mercantile Building. *Id*. at 7.

The Property Management Agreement included certain provisions, such as:

- Article 3.1: Requiring N.F. Mgt. to "manage the Property in a manner commensurate with that of first-class property managers of real properties of a size, character and quality comparable to the Property."

- Article 3.2: Requiring N.F. Mgt. to "have in its employ at all times a sufficient number of capable employees to enable it to adequately manage, operate, and maintain the Property."

- Article 3.4(b): Authorizing N.F. Mgt. to expend funds "if an emergency exists with respect to which expenditures are in Manager's reasonable determination necessary for the preservation or the safety of the Property[.]"

- Article 3.8: Requiring N.F. Mgt. to "review and be familiar with each of the tenant leases affecting the Property, including, without limitation, the Owner's and tenants' repair and maintenance obligations under each of the tenant leases.

ECF No. 32 at 89–92 (Ex. B "Property Management Agreement").

On October 19, 2021, Plaintiffs filed their original petition against Wells Fargo in the 225th Judicial District of Bexar County, Texas. *See* ECF No. 1. Wells Fargo subsequently removed to this Court based on diversity jurisdiction. *Id*. Plaintiffs filed their first amended complaint on March 7, 2022, joining Defendants Texas Name and N.F. Mgt., as well as former owner, Mercantile Building, Ltd. ECF No. 17. Plaintiffs filed their second amended complaint on May 9, 2022, dropping their claims against Mercantile Building, Ltd. ECF No. 30 at 1 n.2.

Plaintiffs, in their second amended complaint, describe The Mercantile Building as a once "first class" and "Class A" property that, due to the acts and/or omissions of Wells Fargo, Texas Name, and N.F. Mgt., is now in need of many, long-overdue repairs, addressing the following maintenance issues:

a. Pavements on site are past their expected service life;
b. Skylights need refurbishing;
c. Roof areas out of code;
d. Ribbon windows are allowing water intrusion;
e. Window walls are allowing water intrusion;
f. Granite panels needs sealants repaired;
g. Weatherstripping needs to be replaced at exterior doors;
h. Retaining walls need crack repair and recoating;
i. Garage needs redirection of a drainage pipe, and the removal of loose or partially detached concrete on overhead surfaces;
j. Soil retaining panels need excavation and reposition to create even ground levels adjacent to the foundation;
k. Fire protection and life safety issues need immediate remediation throughout both the building, the parking garage, and the surrounding area;
l. Bringing the cooling tower drainage up to code to prevent dangerous storm drainage;
m. New refrigerant gas detection systems needed in machinery room;
n. Insufficient fire protection on penthouse wall;
o. Insufficient clearance between air compressors and adjacent equipment;
p. Replacement of all control systems related to the thermostat; and

      q. Replacement of obsolete pneumatic systems.

*Id*. at 4–5. Plaintiffs allege that the cost to restore The Mercantile Building to the condition at which it should have been maintained now exceeds $20 million. *Id*. at 22.

Texas Name and N.F. Mgt. (collectively, "Defendants") move to dismiss all of Plaintiffs' claims against them in the second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 32.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must

contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**II.   Analysis**

Plaintiffs, in their second amended complaint, allege the following causes of action against Defendants. First, Plaintiffs allege breach of contract and promissory estoppel against Defendant Texas Name, arising out of the Written Consent. Second, Plaintiffs allege that Defendants Texas Name and N.F. Mgt. breached their fiduciary duties, both individually and as alter egos and agents of one another. Finally, Plaintiffs allege third-party beneficiary of contract claims against Defendants Texas Name and N.F. Mgt, both individually and as alter egos and agents of each

other, arising out of the Property Management Agreement. ECF No. 30 at 15–22.[1] The Court first turns to the alter ego and agency theories of liability.

### A. Plaintiffs' Claims Against Defendants as Alter Egos and Agents of One Another

Plaintiffs' claims against Defendants Texas Name and N.F. Mgt. as alter egos and agents of one another, or as joint venturers and/or engaged in joint enterprise, are dismissed.

The theory of alter ego liability is not applicable in this case because in Texas, "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (internal citations omitted). Texas courts consider the following factors when determining whether an individual should be considered the alter ego of a corporation:

> "[1] the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, [2] the amount of financial interest, ownership and control the individual maintains over the corporation, and [3] whether the corporation has been used for personal purposes."

*Adams Offshore Ltd. v. OSA Int'l, LLC*, No. CIV.A. H-09-0465, 2011 WL 4625371, at *11 (S.D. Tex. Sept. 30, 2011) (quoting *Bollore*, 448 F.3d at 325). Plaintiffs have not asserted any claims against any individuals in this case, and thus this theory of alter ego liability is dismissed.

Texas law also contemplates alter ego liability in the context of corporate entities, providing that "[a]lter ego comes into play where a corporation is organized and operated as a mere tool or business conduit of another corporation. Alter ego applies when there is such unity between the parent corporation and its subsidiary that the separateness of the two corporations has

---

[1] Plaintiffs' breach of lease claim against Defendant Wells Fargo (ECF No. 30 at 12–15) is not at issue in this pending motion to dismiss because Wells Fargo is not a party to this motion.

ceased and holding only the subsidiary corporation liable would result in injustice." *Adams Offshore*, 2011 WL 4625371 at *9 (citing *Harwood Tire–Arlington, Inc. v. Young,* 963 S.W.2d 881, 885 (Tex. App.—Forth Worth 1998, pet. dism'd by agreement) (internal quotation marks and citations omitted). Because Plaintiffs have not alleged any facts indicating that there is a parent-subsidiary relationship between Texas Name and N.F. Mgt., this theory of alter ego liability is also dismissed. In sum, because it is impossible to tell from the Complaint what corporate veil Plaintiff seeks to pierce, Plaintiffs' veil-piercing claims of alter ego liability must be dismissed.

      Plaintiffs next allege that Texas Name and N.F. Mgt. are agents of one another. An agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" which "may be demonstrated by 'written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority).'" *Bridas SAPIC v. Gov't of Turkmenistan*, 345 F.3d 347, 357 (5th Cir. 2003) (quoting Restatement (Second) of Agency § 1(1) and *Hester Intern. Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989)). Plaintiffs, however, have not provided any factual allegations to support their theory that Texas Name and N.F. Mgt. are agents of one another. Outside of the contractual relationship created between the two parties in the Property Management Agreement, no evidence has been put forth to show a fiduciary duty arising from consent to act on the other's behalf and subject to the other's control. Plaintiffs' only allegations with regards to the relationship between the parties is that they have the same CFO and "operate out of the exact same office and are managed by the exact same individuals." ECF No. 33 at 15. This does not support an agency theory of liability and Plaintiffs' claims, as they extend to Texas Name and N.F. Mgt. operating as agents of one another, are thus dismissed.

Finally, with regards to joint liability, the Supreme Court of Texas has reviewed corporate practices such as:

> engag[ing] in any sharing of names, offices, accounting, employees, services, and finances. There is nothing abusive or unjust about any of these practices in the abstract. Different entities may coordinate their activities without joint liability. Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace. We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances. There must also be evidence of abuse, or as we said in *Castleberry,* injustice and inequity. By "injustice" and "inequity" we do not mean a subjective perception of unfairness by an individual judge or juror; rather, these words are used in *Castleberry* as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like. Such abuse is necessary before disregarding the existence of a corporation as a separate entity. Any other rule would seriously compromise what we have called a "bedrock principle of corporate law"—that a legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations.

*SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454–55 (Tex. 2008). As such, disregarding the corporate structure in this case is not appropriate because there is no alleged injustice or inequity at play, such as fraud, criminal conduct, or any of the other *Castleberry* considerations. Joint liability between Texas Name and N.F. Mgt. is not established simply by alleging that the parties have the same CFO and "operate out of the exact same office and are managed by the exact same individuals." ECF No. 33 at 15. Plaintiffs' claims against Defendants Texas Name and N.F. Mgt. as alter egos and agents of one another, or as joint venturers and/or engaged in joint enterprise, are therefore dismissed.

Although the Court is dismissing Plaintiffs' alter ego, agency, and joint liability claims, it will permit Plaintiff to replead. The Federal Rules of Civil Procedure permit liberal amendment of pleadings. Rule 15(a) provides that "a party may amend its pleading with . . . the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In this case, Plaintiffs have requested leave to amend in the event the Court finds their pleadings deficient. The Court allows Plaintiff until December 7, 2022 to amend its Complaint with regards to these claims.

### B. Plaintiffs' Claims for Breach of Contract and Promissory Estoppel

Plaintiffs next allege that Plaintiffs and Texas Name, by entering into the Written Consent on June 13, 2014, agreed that Texas Name would, "as the agent and tenant-in-common of Plaintiffs," retain N.F. Mgt. and enter into the Property Management agreement with N.F. Mgt. to "ensure property management of the Property." ECF No. 30 at 15. Plaintiffs allege that the Written Consent "created an agency relationship" whereby Texas Name would enter into the Property Management Agreement with N.F. Mgt. and ensure proper maintenance and upkeep of the Property and/or cause N.F. Mgt. to ensure proper maintenance and upkeep of the Property. *Id*. at 16. By failing to act in a manner consistent with the best interests of Plaintiffs and Texas Name, Plaintiffs allege that Texas Name violated its responsibilities and obligations as laid out in the Written Consent. *Id*.

In Texas, the necessary elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018).

9

Promissory estoppel, although normally a defensive theory, can be asserted as a cause of action where a promisor unjustly induces another to substantial action or inaction. *Martin–Janson v. JP Morgan Chase Bank, N.A.*, 536 F. App'x 394, 398 (5th Cir. 2013); *see also Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 138–40 (Tex. App.—Corpus Christi 2001, no pet.) "The requisites of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." *Ford*, 44 S.W.3d at 139 (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

The Written Consent did not obligate Texas Name to "ensure" proper maintenance and upkeep of the Property. Rather, the Written Consent simply authorized certain members of the Board to enter into the Property Management Agreement on behalf of the Council of Co-Owners (Plaintiffs and Defendant Texas Name). Defendant Texas Name fully performed its obligations under the Written Consent by entering into the Property Management Agreement with N.F. Mgt. No other contractual duty was imposed on Defendant Texas Name in the Written Consent that it failed to complete. Thus, Plaintiffs' claim for breach of contract against Defendant Texas Name fails as a matter of law and must be dismissed.

Plaintiffs' promissory estoppel claim fails for the same reasons highlighted above. Plaintiffs allege that the Written Consent obligated Texas Name to enforce the Property Management Agreement, and that it subsequently failed to do so by letting the building fall into a state of disrepair. However, no contractual duty was imposed on Defendant Texas Name in the Written Consent except for the duty to enter into the Property Management Agreement with N.F. Mgt. For these reasons, Plaintiffs' promissory estoppel claim also fails as a matter of law and must be dismissed. Plaintiffs could not have substantially relied on Texas Name to enforce the Property

Management Agreement since the Written Consent did not impose that duty on Texas Name. Plaintiffs' claims for breach of contract and promissory estoppel are thus dismissed.

### C. Plaintiffs' Claims for Breach of Fiduciary Duty

Plaintiffs allege that N.F. Mgt. and Texas Name violated fiduciary duties they owed as Plaintiffs' agents under the Property Management Agreement and the Written Consent. ECF No. 30 at 18–20. Under Texas law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship between the plaintiff and the defendant; (2) the defendant breached a fiduciary duty to the plaintiff; (3) and the defendant's breach resulted in an injury to the plaintiff or a benefit to the defendant. *D'Onofrio v. Vacation Pubs., Inc.*, 888 F.3d 197, 215 (5th Cir. 2018).

Defendants dispute the existence of a fiduciary duty and assert that Plaintiffs' claims for breach of fiduciary duty would otherwise be barred by the economic loss doctrine. ECF No. 32 at 12–13. The economic loss rule in Texas states that, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed* 711 S.W.2d 617, 618 (Tex. 1986) (*see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."). In such cases, losses are more appropriately addressed through common-law breach-of-contract claims than through tort claims. *See Sharyland Water Supply*, 354 S.W.3d 407, 418 (Tex. 2011).

Still, "it is not enough to simply say that all tort claims are barred when the economic loss is the subject of a contract, as 'there is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law.'" *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d

11

633, 652 (W.D. Tex. 2019) (quoting *Sharyland*, 354 S.W.3d at 415 (internal citations omitted)). The application of the economic loss rule depends on an analysis of the rationale of the rule as applied to a particular situation. *McCaig v. Wells Fargo Bank, N.A.*, 788 F.3d 463, 474 (5th Cir. 2015). "The contractual relationship of the parties may create duties under both contract and tort law." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (quoting *Montgomery Ward Co. v. Scharrenbeck,* 204 S.W.2d 508 (Tex. 1947)). "The acts of a party may breach duties in tort or contract alone or simultaneously in both." *Id.* When a party states a tort claim arising from (1) an alleged breach of an independent duty (*i.e.*, one not arising from the contract), and (2) the harm suffered is not merely the economic loss of a contractual benefit, the economic loss rule does not apply. *Chapman*, 445 S.W.3d at 718. Thus, what matters in determining whether the economic loss rule applies are the source of the duty allegedly breached and the nature of the injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 45 (Tex. 1998).

Accordingly, whether Plaintiffs' claims for breach of fiduciary duty are barred by the economic loss rule will depend on whether the contractual agreements between the parties created an independent fiduciary relationship. "Whether a fiduciary duty exists is a question of law." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). "[A] fiduciary duty will not be lightly created since it imposes extraordinary duties and requires the fiduciary to put the interests of the beneficiary ahead of its own if the need arises." *ARA Auto. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997) (internal citations omitted). Thus, outside of agency relationships, where agents owe fiduciary duties to their principals (*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002)), Texas law does lightly imply fiduciary duties in the absence of an agreement explicitly creating such a duty.[2]

---

[2] This general rule applies with equal force to Plaintiffs' assertion that Texas Name owes them a fiduciary duty as a cotenant of the Property. *Id.* at 20. No special relationship is created wherein one cotenant owes a special fiduciary

Plaintiffs allege that an enforceable fiduciary duty arose as a result of the Written Consent and the Property Management Agreement. Plaintiffs allege that Article 3.1 of the Property Management Agreement imposed fiduciary duties on N.F. Mgt. as the property manager of the Property. *Id*. at 18; *see* ECF No. 32 at 89 (requiring N.F. Mgt. to "manage the Property in a manner commensurate with that of first-class property managers of real properties of a size, character and quality comparable to the Property")). They further assert that Article 3.5, requiring the property manager to use diligent efforts to collect all rents and other charges, (and Article 3.8, requiring the property manager to be familiar with the owner's and tenants' repair and maintenance obligation under the tenant leases, imposed fiduciary duties on N.F. Mgt. ECF No. 30 at 19; *see* ECF No. 32 at 91–92. Plaintiffs also allege that, as signatory parties to the Written Consent, Plaintiffs and Texas Name agreed that "Texas Name would, as the agent of Plaintiffs, retain N.F. Mgt. and enter into the Property Management Agreement with N.F. Mgt." for property management and maintenance. ECF No. 33 at 17. Because none of these agreements contains any language that explicitly creates a fiduciary relationship between any of the parties, the Court must rely on the principles of agency law to determine whether a fiduciary relationship exists and, if so, how the scope of the agent's duties.

As discussed *supra* in Section II(A), an agency relationship is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act" which "may be demonstrated by 'written or spoken words or conduct, by the principal, communicated either to the agent (actual

---

duty to the other, "in the absence of an agreement or contract providing for such." *In re the Marriage of Majdabadi*, 118 S.W.3d 868 (Tex. App.—Texarkana 2003, no pet.) (citing *Donnan v. Atl. Richfield*, 732 S.W.2d 715, 717 (Tex. App.—Corpus Christi 1987, writ denied)). The Written Consent was not an agreement establishing a fiduciary relationship between Plaintiffs and Texas Name as tenants in common. Rather, as explained *supra* in Section II(B), the Written Consent merely authorized Texas Name to engage N.F. Mgt. as the property manager.

authority) or to the third party (apparent authority).'" *Bridas SAPIC*, 345 F.3d at 357 (5th Cir. 2003) (internal citations omitted).

Plaintiffs allege that, through the Written Contract, Texas Name agreed to act as Plaintiffs' agent in retaining N.F. Mgt. and entering into the Property Management Agreement. The amended complaint contains sufficient facts to establish that such an agency relationship existed between Texas Name and Plaintiffs. This relationship, however, plausibly extended only to Texas Name's authority to engage N.F. Mgt. as the property manager. Plaintiffs have not provided any factual allegations to support their theory that the scope of the agency relationship extended to the actual maintenance of the premises. Texas Name was neither obligated nor authorized to do anything under the Written Consent other than enter into an agreement on behalf of Plaintiffs and Texas Name for property management services from N.F. Mgt. In other words, there is no reason to believe that either N.F. Mgt. or Texas Name were acting as Plaintiffs' agents in fulfilling their obligations under the Property Management Agreement. Nor is there any reason to believe that, in entering into the Property Management Agreement, Texas Name exceeded the scope of its authority as Plaintiffs' agent.

In sum, the duties allegedly breached by Texas Name arise solely under the relevant contracts—the Written Consent and the Property Management Agreement. Further, Plaintiffs allege losses only in the form of damage to Unit 1 of the Property,[3] the subject matter of the contracts. Accordingly, their claims for breach of fiduciary duty are barred by the economic loss

---

3 Plaintiffs' second amended complaint seeks actual monetary damages of $20,000,000, "the cost to restore The Mercantile Building to the condition at which it should have been maintained[.]" ECF No. 30 at 22. They also seek specific performance "compelling Defendants to abide by the terms of the Lease and immediately performance all maintenance, repair and upkeep at The Mercantile Building in a manner that will restore and preserve its status as a 'Class A' commercial space, which is what it was when the Lease was commenced." *Id*. at 22–23.

doctrine. Accordingly, Defendants' motion to dismiss the breach of fiduciary duty claims against Defendant Texas Name and N.F. Mgt. is granted and the claims are dismissed.

### D. Plaintiffs' Claims as a Third-Party Beneficiary of Contract

In Texas, "[p]arties are presumed to be contracting for themselves only." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 362 (5th Cir. 2003). Thus, only parties to a contract have standing to sue, unless a third party to the contract can demonstrate that the contract was made for their benefit. *Kona Tech. Corp. v. S. Pacific Transp. Co.,* 225 F.3d 595, 602 (5th Cir. 2000). "To make such a showing, the third party must demonstrate that (1) it was not privy to the written agreement; (2) the contract was actually made for its benefit; and (3) the contracting parties intended for it to benefit by their agreement." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 936 (W.D. Tex. 2015), *aff'd sub nom. AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205 (5th Cir. 2016); *see also Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.,* 924 F.2d 1347, 1350–51 (5th Cir. 1991).

"The intention to contract or confer a benefit to a third party must be clearly and fully spelled out in order to show the contracting parties entered into the contract directly for the third party's benefit." *First Union Nat'l Bank v. Richmont Cap. Partner*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 641, 651 (Tex. 1999)). "Furthermore, any intent of the contracting parties to benefit a third-party is to be derived solely from the language of the contract." *Talman*, 924 F.2d at 1350–51. "The fact that a third party might receive an incidental benefit from a contract does not give that third party a right to enforce the contract." *First Union Nat'l Bank*, 168 S.W.3d at 929 (citing *MCI*, 995 S.W.2d at 651). "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id*. (citing

*Dallas Firefighters Ass'n v. Booth Rsch. Grp., Inc.*, 156 S.W.3d 188, 192–93 (Tex. App. —Dallas 2005, pet. denied); *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App. —Dallas 2001, no pet.)). In sum, "'[u]nder Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status.'" *Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A. 3:04–CV–2321P, 2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006) (quoting *Missouri Pac. R.R. Co. v. Harbison–Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994)).

Plaintiffs have alleged sufficient facts to demonstrate that they were an intended beneficiary of the Property Management Agreement. First, it is undisputed that Plaintiffs were not privy to the Property Management Agreement. Second, the Property Management Agreement is a service contract, "one in which one party agrees to provide skills, labor, effort or time to another in exchange for valuable consideration. Maintenance contracts are a type of service contract." § 6:2. Definition of service contract, 2 Tex. Prac. Guide Bus. Trans. Second. Finally, Plaintiffs were intended beneficiaries of the Agreement, which was entered into for their benefit.

Plaintiffs are owners of one of the Units that serviced by N.F. Mgt. under the Property Management Agreement. Article 3.8 requires N.F. Mgt. to "review and be familiar with each of the tenant leases affecting the Property, including, without limitation, the Owner's and tenants' repair and maintenance obligations under each of the tenant leases." ECF No. 32 at 89–92. The language of the Agreement indicates that Plaintiffs were not merely incidental beneficiaries but intended beneficiaries of the contract. The intent of the contracting parties to confer a direct benefit on Plaintiffs, by requiring the property manager to be familiar with tenant leases, such as the lease between Plaintiffs and Wells Fargo, indicates that the Agreement directly served the interests of Plaintiffs in overseeing their tenants.

Because Plaintiffs have provided sufficient factual allegations at this point that they were the intended beneficiaries of the Property Management Agreement, Plaintiffs' third-party beneficiary claims against N.F. Mgt. in its individual capacity and arising out of the Property Management Agreement, remains pending. Plaintiffs' claim against Defendant Texas Name for third-party beneficiary of contract is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint (ECF No. 32) is **GRANTED IN PART AND DENIED IN PART.**

Plaintiffs' claims against Defendant Texas Name for breach of contract and promissory estoppel, as well as third-party beneficiary of contract, and Plaintiffs' claims for breach of fiduciary duty against Defendants Texas Name and N.F. Mgt., both in their individual capacity and as alter egos and agents of one another, are **DISMISSED**.

Plaintiffs' third-party beneficiary of contract claim against N.F. Mgt. in its individual capacity remains pending. Plaintiffs' third-party beneficiary of contract claims against Defendants Texas Name and N.F. Mgt. as alter egos and agents of one another are **DISMISSED**, but the Court will permit Plaintiffs to replead these claims by December 7, 2022.

Finally, Plaintiffs' claim against Wells Fargo remains pending.

It is so **ORDERED**.

**SIGNED** this 7th day of November, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE