# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| L. B. BENON FAMILY LIMITED PARTNERSHIP, BENON MARITAL TRUST, HASSON FAMILY TRUST, GREENS FAMILY LIMITED PARTNERSHIP, | § § § § § | |
| *Plaintiffs*, | § § | Civil Action No. SA-21-CV-01115-XR |
| v. | § § | |
| WELLS FARGO BANK, N.A., N.F. MGT., INC., TEXAS NAME MERCANTILE INVESTMENT, LLC, | § § § § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Defendant Wells Fargo Bank, N.A.'s motion for partial summary judgment (ECF No. 45), Plaintiffs L.B. Benon Family Limited Partnership, Benon Marital Trust, Hasson Family Trust, and Greens Family Limited Partnership's response (ECF No. 47), Defendant N.F. Mgt., Inc.'s response (ECF No. 49), and Defendant Wells Fargo's replies to those responses (ECF Nos. 49 and 50 respectively). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

As all parties are familiar with the facts in this case, the Court includes here only those facts necessary to its analysis of the pending motion for summary judgment.[2]

---

[1] These facts are undisputed unless otherwise noted.

[2] Additional background information can be found in the Court's November 7, 2022 Order granting in part and denying in part Defendants N.F. Mgt., Inc. and Texas Name Mercantile Investment, LLC's motion to dismiss. ECF No. 40.

L.B. Benon Family Limited Partnership, Benon Marital Trust, Hasson Family Trust, and Greens Family Limited Partnership (collectively, "Plaintiffs") allege that Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), N.F. Mgt., Inc. ("N.F. Mgt."), and Texas Name Mercantile Investment, LLC ("Texas Name") breached their contractual and fiduciary duties in the maintenance of The Mercantile Building (the "Building"), a commercial condominium project located at 40 NE Loop 410, San Antonio, Texas. ECF No. 32 at 1.

Together, Plaintiffs and Texas Name own 100% of The Mercantile Building. *Id*. at 2. Plaintiffs own Unit 1 of the Building, which they lease to Wells Fargo. *Id*. Unit 1 constitutes 24.465% of the overall space in the Building. ECF No. 45-1 at 36 (Exhibit D to Declaration of Condominium). Texas Name owns the remaining Units (2-7) in the Building. *See* ECF No. 30 at 127 (Ex. D "Written Consent"). N.F. Mgt. serves as the property manager of The Mercantile Building under a Property Management Agreement executed between Texas Name and N.F. Mgt. *Id*. at 7.

Plaintiffs, in their second amended complaint, describe The Mercantile Building as a once "first class" and "Class A" property that, due to the acts and/or omissions of Wells Fargo, Texas Name, and N.F. Mgt., is now in need of many, long-overdue repairs, addressing the following maintenance issues:

a. Pavements on site are past their expected service life;
b. Skylights need refurbishing;
c. Roof areas out of code;
d. Ribbon windows are allowing water intrusion;
e. Window walls are allowing water intrusion;
f. Granite panels needs sealants repaired;
g. Weatherstripping needs to be replaced at exterior doors;
h. Retaining walls need crack repair and recoating;
i. Garage needs redirection of a drainage pipe, and the removal of loose or partially detached concrete on overhead surfaces;
j. Soil retaining panels need excavation and reposition to create even ground levels adjacent to the foundation;

    k.  Fire protection and life safety issues need immediate remediation throughout both the building, the parking garage, and the surrounding area;

    l.  Bringing the cooling tower drainage up to code to prevent dangerous storm drainage;

    m. New refrigerant gas detection systems needed in machinery room;

    n.  Insufficient fire protection on penthouse wall;

    o.  Insufficient clearance between air compressors and adjacent equipment;

    p.  Replacement of all control systems related to the thermostat; and

    q.  Replacement of obsolete pneumatic systems;

ECF No. 30. at 4–5. The Condominium Declaration describes the general common elements of the Building as including items such as the following: the land, the foundations, bearing walls, perimeter walls, roof, columns, beams, supports, ceilings, floors, thoroughfares like stairways, entrances, and exits, the yard, garden, janitorial rooms and facilities, central service compartments, elevators, parking spaces in the garage, and any other installations to be commonly used by the Owners or otherwise necessary for the existence, upkeep, and safety of the Building. ECF No. 45-1 at 3–4). A majority of the needed repairs above relate to the general common elements of the Building.

On October 19, 2021, Plaintiffs filed their original petition against Wells Fargo in the 225th Judicial District of Bexar County, Texas. *See* ECF No. 1. Wells Fargo subsequently removed to this Court based on diversity jurisdiction. *Id*. Plaintiffs filed their first amended complaint on March 7, 2022, joining Texas Name and N.F. Mgt., as well as former owner, Mercantile Building, Ltd. ECF No. 17. Plaintiffs filed their second amended complaint on May 9, 2022, dropping their claims against Mercantile Building, Ltd. ECF No. 30 at 1 n.2. On November 7, 2022, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 40. Plaintiffs' claims against Defendant Wells Fargo were not the subject of that motion to dismiss and remain pending before the Court.

On December 20, 2022, Wells Fargo filed a motion for partial summary judgment. ECF No. 45. Plaintiffs responded on January 17, 2023 (ECF No. 47), as did N.F. Mgt. (ECF No. 48).

Defendant Wells Fargo filed it replies to those responses on January 31, 2023 (ECF Nos. 49 and 50 respectively).

Plaintiffs' breach of contract claim against Wells Fargo is the subject of the pending motion for summary judgment. Plaintiffs allege that Wells Fargo's breach of its contractual duties imposed by or assumed under the Lease caused Plaintiffs' injuries. ECF No. 30 at 15. Specifically, Plaintiffs allege that Defendant's failure to comply with the requirements of Section 11 of the Lease (failure to maintain and repair the Building) resulted in the Building's much needed maintenance and repair. *Id*. at 13. Wells Fargo contends that, as highlighted by Plaintiffs' reading of Section 11 of the Lease and the Bylaws in its response brief (ECF No. 47), Section 11 and the Bylaws impose upon Wells Fargo a payment obligation, but not a performance obligation. As such, Wells Fargo maintains that it has has not breached its contractual duties as they relate to the common elements in the Building because there has been no allegation that Wells Fargo has failed to pay for its proportional share of maintenance and repair or an allegation that Wells Fargo has failed to pay for maintenance and repair of common elements in the Building caused by Wells Fargo's negligence or misuse.

Wells Fargo therefore requests partial summary judgment as to Plaintiffs' claim that Wells Fargo breached the lease by failing to repair and maintain any portion of the Mercantile Building that is a "general common element" as defined in the Condominium Declaration and Bylaws.

## DISCUSSION

### I.      Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving

party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that

is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.      Analysis

### A.  Relevant Provisions

The 1990 Lease Agreement provides in relevant part:

> 11. Maintenance and Repair.
>
> (a) Lessee acknowledges that it has received the Leased Premises in good order and condition. Lessee agrees that it will, at its expense, keep and maintain the Leased Premises, including any altered, rebuilt, additional or substituted buildings, structures and other improvements thereto in good repair and appearance, and will with reasonable promptness make all structural and non-structural, foreseen and unforeseen, and ordinary and extraordinary changes and repairs of every kind and nature which may be required to be made upon or in connection with the Leased Premises or any part thereof, including without limitation any required repairs or maintenance of Common Elements and Limited Common Elements, in order to keep and maintain the Leased Premises in such good repair and appearance as exists as of the commencement date of this Lease. . . .

ECF No. 30 at 46–47.

The Bylaws, in relevant part, provide that:

> Section 4.01.   Determination of Common Expenses and Fixing of Assessments.
>
> B. Payment of Assessments.   Copies of the estimated annual budget for each fiscal year shall be furnished to each Owner prior to the beginning of such year, although the delivery of a copy of the budget to each Owner shall not affect the liability of any Owner for any existing or future assessments. In the event any Owner shall object to any matters contained in the estimated annual budget, such Owner

shall give written notice of objection to the Manager within thirty (30) days after the budget was furnished by the Manager. Failure to give written notice of objection within said thirty (30) day period shall be conclusively deemed as acceptance and adoption of the annual budget by each Owner not so giving notice of objection. On or before the first day of the first month and of each succeeding month of the year covered by the annual budget, each Owner shall pay, as its respective monthly assessment for the Common Expenses, one-twelfth (1/12th) of its proportionate share of the Common Expenses for such year as shown by the annual budget. Such proportionate share for each Owner shall be in accordance with the respective ownership interest in the Common Elements allocated to the United owned by such Owner, as set forth in Exhibit D to the Declaration, as from time to time amended, or as otherwise agreed upon among the Owners.

[. . .]

Section 4.05.   Maintenance and Repair.

B. All maintenance, replacement of and repairs to the General Common Elements as defined in the Declaration, the painting and decorating of the exterior walls and doors of the improvements and the washing on exterior glass, the maintenance of the landscaping (interior and exterior) and the maintenance and upkeep of the common drives and parking areas shall be made by the Manager for the account of all of the Owners and shall be charged to all the Owners as a Common Expense, except to the extent that the same are necessitated by the negligence, misuse or neglect of an Owner, in which case such expense shall be charged to such Owner.

ECF No. 45-1 at 15, 17.

**B.  Wells Fargo's Motion for Partial Summary Judgment**

Defendant Wells Fargo contends, and the Court agrees, that Plaintiffs' construction of Section 11(a) of the Lease, when read in conjunction with the Bylaws, imposes upon Defendant Wells Fargo a payment obligation, and not a performance obligation.

To begin, Wells Fargo provided evidence that it paid monthly assessments and special assessments assessed against Unit 1 by the Manager. ECF No. 45 at 12; ECF No. 45-5 at 2–3. And Plaintiffs' second amended complaint makes no mention of Wells Fargo's failure to pay either for

its proportional share of expenses related to maintenance and repair of the common elements nor

its failure to pay for maintenance and repair of the common elements caused by Wells Fargo's

own negligence or misuse.

The Court's analysis that the contract at issue imposes a payment obligation upon Wells

Fargo, but not a performance obligation to undertake its own repair and maintenance of the

common elements of the building, is further aided by a letter sent from Plaintiffs to Wells Fargo

in November 2017, which confirms the Court's interpretation of Wells Fargo's responsibilities

within the lease as they pertain to the Building's common elements. As counsel for Plaintiffs

explained:

> In any event, the Manager agrees with Wells Fargo that the elevator
> requires significant repair, if not replacement, and indeed has
> determined that other Condominium elevators require similar
> upgrade and repair. The Manager has submitted a supplemental
> budget to cover the costs of the necessary elevator repairs, which it
> attached, along with the underlying work proposals, to the NF Letter
> as Exhibit D. The total estimated cost of the necessary elevator
> repairs contemplated by the Supplemental Budget is $956,212.00.
> Pursuant to the Condominium's operating documents, the Manager
> agrees that this cost should be divided based on percentage
> ownership of the building. Unit l's 24.465 percent share of this
> expense comes to $233,937.27.
>
> As your past correspondence acknowledges, Wells Fargo is
> responsible under the Lease for the Owners' pro rata share of the
> costs of the elevator repairs. . . . Under the Declaration, each owner
> is responsible for its pro rata share of all "Common Element"
> maintenance and repair. The Declaration includes the elevators and
> elevator shafts within the definition of "Common Elements." The
> Lease is an absolute net lease under which the parties expressly
> stated their intention that the Owners would net the full amount of
> all rent paid under the Lease. The Lease furthermore obligates Wells
> Fargo to pay - on behalf of the Owners - any assessments or charges,
> whether regular or special, due under the Declaration or relating to
> the Condominium. Wells Fargo specifically assumed the obligation
> to pay expense of all necessary repairs, including "required repairs
> or maintenance of Common Elements." Wells Fargo is therefore
> responsible for the $233,937.27 share of the elevator repair costs
> owed in connection with the Condominium.

ECF No. 45-5 at 5–6 (internal citations omitted).

Plaintiffs' amended complaint alleges the following: "Wells Fargo's failure to abide by the Lease and perform or ensure performance of routine maintenance, repair, and upkeep of The Mercantile Building has harmed Plaintiffs as described above by significantly depleting the value of The Mercantile Building." ECF No. 30 at 11.

While Section 11(a) requires Wells Fargo to make any required repairs or maintenance of the Building's common elements, the Bylaws provide that maintenance and upkeep of the common elements shall be made by the Building Manager and subsequently charged to all the Owners as a Common Expense.

Wells Fargo contends, and the Court agrees, that Section 11(a) mandates that Wells Fargo repair and maintain the common elements only to the extent that the Declaration and Bylaws require, and the Declaration and Bylaws only impose such an obligation if Wells Fargo is negligent or misuses the common elements. ECF No. 45 at 14–15. Reading Section 11(a) to impose a duty on Wells Fargo to make repairs themselves would require Wells Fargo to make more than the 24.465% of repairs they are responsible for. The Court rejects this strained reading of Section 11(a) as it would make Wells Fargo responsible, as only a partial owner, for all repairs and maintenance of the common elements of the Building, even if they were not due to Wells Fargo's own negligence or misuse. The Court's analysis is further guided by the Lease's explicit incorporation by reference of both the Condominium Declaration and Bylaws. *See* ECF No. 45-2 at 7 (Section 4 of the Lease notes that the Lessee may not occupy or use the Leased Premises in any way that would be "in breach or violation of the Condominium Declaration or the By-Laws").

Importantly, the Condominium Declaration gives power to a professional management company to perform maintenance and repair of the common elements. *See* ECF No. 45-1 at 6. The Manager is then responsible for collecting the common expenses from the owners in relation to

their proportional ownership interests. There is only one exception specified in the Bylaws to that arrangement—expenses stemming from an owner's negligence or misuse. *See* ECF No. ECF No. 45-1 at 17. Because Plaintiffs do not allege in their second amended complaint that Wells Fargo failed to pay the 24.465% share of the common expenses determined by Manager N.F. Mgt., or any expenses charged to them due to their own negligence or misuse, Plaintiffs' breach of contract claim against Wells Fargo for failure to repair and maintain the Building's common elements not caused by its own negligence or misuse must be dismissed. Plaintiffs have advanced no theory that Wells Fargo has breached its payment obligation as it relates to its contractual duties under the Lease, Declaration, and Bylaws.

The Court notes, however, that to the extent that Wells Fargo's motion for partial summary judgment seeks a declaration from the Court that, as a matter of law, it is not responsible for payment of *any* costs to maintain or repair the common elements, its motion is denied.

First, the Bylaws make clear that Wells Fargo is responsible for its proportional share of the common expenses. *See* No. 45-1 at 15 (Section 4.01. Determination of Common Expenses and Fixing of Assessments). Second, the Bylaws make clear that Wells Fargo is obligated to pay for the entirety of costs for maintenance and repair associated with Wells Fargo's own negligence or misuse. *See id.* at 17 (Section 4.05. Maintenance and Repair). Therefore, to the extent Defendant Wells Fargo seeks a declaration from the Court that, as a matter of law, it is not responsible for any repair and maintenance of the common elements based on a finding by the Court that Wells Fargo was not negligent and did not misuse the common elements, the Court holds there is genuine factual dispute not appropriate for summary judgment. Discovery in this case is ongoing. As N.F. Mgt. points out in its response, Plaintiffs' Property Condition Assessment states that "[v]arious electrical boxes were open / uncovered in the mechanical and electrical rooms located throughout

the building." ECF No. 30 at 159.  This fact alone is indicative of a genuine dispute as to what damage to the common elements, if any, Wells Fargo may have been responsible for through its own negligence or misuse. Accordingly, the Court today says only that Wells Fargo cannot be held liable for damages to the common elements either beyond its proportional share of common expenses or that were not caused by Wells Fargo's negligence or misuse.

## CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment (ECF No. 45) is **GRANTED**. Plaintiffs' breach of contract claim against Wells Fargo as it pertains to Wells Fargo's failure to repair and maintain the common elements is dismissed; in all other respects, Plaintiffs' breach of contract claim against Wells Fargo remains pending.

It is so **ORDERED**.

**SIGNED** April 19, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE