**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| L. B. BENON FAMILY LIMITED PARTNERSHIP, BENON MARITAL TRUST, HASSON FAMILY TRUST, GREENS FAMILY LIMITED PARTNERSHIP, | § § § § § | SA-21-CV-01115-XR |
| *Plaintiffs* | § § | |
| -vs- | § § | |
| N.F. MGT., INC., TEXAS NAME MERCANTILE INVESTMENT, LLC, TEXAS NAMED LIMITED, L.P., ANUAR NAME YAPUR, JESUS NAME YAPUR, SIMON NAME YAPUR, MERCANTILE BUILDING COUNCIL OF CO-OWNERS, DOES 1-100, | § § § § § § § § | |
| *Defendants* | § | |

**ORDER**

On this date, the Court considered Defendants' partial motion to dismiss Plaintiffs' Third Amended Complaint (ECF No. 90), Plaintiffs' response (ECF No. 92), and Defendants' reply (ECF No. 93). After careful consideration, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs L.B. Benon Family Limited Partnership, Benon Marital Trust, Hasson Family Trust, and Greens Family Limited Partnership (collectively, "Plaintiffs") allege that Defendants breached their contractual and fiduciary duties in the maintenance of The Mercantile Building ("the Building"), a commercial condominium project located at 40 NE Loop 410, San Antonio, Texas. ECF No. 71.[1]

---

[1] Specifically, Plaintiffs bring suit against N.F. Mgt., Inc., and Texas Name Ltd., LP, for breach of contract; against Anuar Name Yapur, Jesús Antonio Name Yapur, and Simón Name Yapur for breach of fiduciary duty; against Texas Name Mercantile Investment LLC, Anuar Name Yapur, Jesús Antonio Name Yapur, Simón Name Yapur, for

Plaintiffs assert that Defendants Anuar Name Yapur, Jesús Antonio Name Yapur, and Simón Name Yapur ("the N-Y Brothers") own Units 2–7 of the Building through one or more shell entities, including at various times Defendants Texas Name Ltd., LP ("Texas Name Ltd.") and Texas Name Mercantile Investment LLC ("TNMI"). *Id.* ¶¶ 37, 41. Plaintiffs own Unit 1, the only other unit in the Building. *Id.* ¶ 38.

A "Condominium Declaration" and "Condominium Bylaws" control the governance of the Building. *Id.* ¶¶ 45–48. The Condominium Declaration establishes a Condo Association, which is vested with "the authority and responsibility . . . to maintain, repair, replace, operate, and regulate and manage the Common Elements" of the Condo Building. *Id.* ¶¶ 54, 57.

Pursuant to the Condominium Declaration, Plaintiffs (the owner of Unit 1) own a 24.465% interest in the Condo Building's Common Elements, while Defendant TNMI (the owner of Units 2–7) owns 75.535% of the Common Elements. *Id.* ¶ 53. Because each unit owner is entitled to cast the number of Condo Association votes equal to the percentage of undivided interest in the Common Elements, Defendant TNMI is entitled to approximately 76% of the Condo Association votes, and Plaintiffs are entitled to approximately 24% of the Condo Association votes. *Id.* ¶ 55. Plaintiffs assert that Defendant TNMI's "approximately three-to-one advantage over Plaintiffs" renders "Plaintiffs' votes meaningless because there is no scenario in which TNMI controls less than a supermajority of Condo Association votes." *Id.* ¶ 55.

Likewise, Plaintiffs allege that the structure of the Condo Association's Board of Directors ("Condo Board"), which is composed of the three N-Y Brothers and one Plaintiffs' representative,

---

conversion; and against Anuar Name Yapur, Jesús Antonio Name Yapur, Simón Name Yapur, and Texas Name Mercantile Investment LLC for civil conspiracy. Plaintiffs also bring this action for breach of fiduciary duty in the right of and on behalf of the Mercantile Building Council of Co-Owners (the "Condo Association") as members, co-owners, partners and/or shareholders and on behalf of all other such persons and/or entities similarly situated.

also provides the N-Y Defendants[2] with a super majority of the Condo Board. *Id.* ¶ 56. The Condo Board is required to "conduct regular and special meetings according to the Bylaws" and to "employ a professional management company ('Manager'), approved by a Majority of Owners, to perform such services and duties as set forth in the Bylaws." *Id.* ¶ 58. The Condo Board is also required to "determine" "convenient" times and places for meetings of the entire Condo Association. *Id.*

Plaintiffs allege that the N-Y Defendants exploited their control of the Condo Association and Condo Board to commit a series of business torts. First, Plaintiffs contend that the N-Y Brothers breached their fiduciary duty of loyalty to Plaintiffs by hiring N.F. Mgt., an alleged "non-professional management company" solely owned by the N-Y Brothers, to maintain and service the Building. *Id.* ¶ 69, 97. On January 1, 2014, Defendants Texas Name Ltd. and N.F. Mgt. executed a Property Management Agreement that named N.F. Mgt. as the "Manager" of the Building responsible for "operating, maintaining, servicing[,] and improving" the Building pursuant to any requests by the Building's owners. *Id.* Plaintiffs allege that by hiring an entity that the N-Y Brothers owned to address all Building repairs, the N-Y Brothers created an unresolvable conflict of interest because this structure incentivizes "N.F. Mgt. to inflate its assessments and fees while minimizing its costs by doing as little and as low-quality work as possible, all while knowing that Plaintiffs are powerless to challenge this misconduct before the Condo Association or Condo Board." *Id.* ¶¶ 70–71.

Further, Plaintiffs allege that Defendant N.F. Mgt. breached its contractual duty to maintain and repair the Building, including the Common Elements, to the standard required by the Property

---

[2] Plaintiffs define the "N-Y Defendants" as the N-Y Brothers and Defendants N.F. Mgt., Inc. ("N.F. Mgt."), Texas Name Ltd., TMNI, and Does 1-50, the unknown shell entities controlled by the N-Y Brothers to allegedly conceal their assets.

Management Agreement. *Id.* ¶ 97. Plaintiffs identify twenty-seven "necessary repairs" to the Building that Defendant N.F. Mgt. has failed to perform.[3] *Id.* ¶ 78. Likewise, Plaintiffs assert that Defendant Texas Name Ltd. "breached its duty" to enforce the Property Management Contract and require Defendant N.F. Mgt. to perform such repairs. *Id.* ¶¶ 79, 97.

In addition, Plaintiffs allege that Defendants TNMI and the N-Y Brothers misappropriated and converted litigation settlement funds that should have been used to repair storm damage to the Building. *Id.* 71 ¶ 80. Following a 2016 hailstorm that severely damaged the roof of the Building, Defendant TNMI filed a claim against the Building's insurer, Cincinnati Insurance Company. *Id.* 71 ¶ 81. In 2018, Defendant TNMI resolved the lawsuit for approximately $867,000 after attorneys' fees. *Id.* ¶ 82. Defendant TNMI then spent $230,000 of the settlement on repairs to the Building and allegedly either pocketed the remainder or transferred it to the N-Y Brothers, despite the fact that this settlement resulted from the insurer's failure to pay for repairs to the General Common Elements of the Building. *Id.* ¶¶ 80–83. In doing so, the N-Y Brothers, acting in their roles as the sole owners and directors of TNMI, allegedly converted Plaintiffs' personal property and engaged in a civil conspiracy. *Id.* ¶¶ 82–83, 163–68.

---

[3] Plaintiffs contend that such repairs include: (i) pavements on site are past their expected service life and need to replaced; (ii) skylights need refurbishing; (iii) roof needs to be repaired to code; (iv) ribbon windows allowing water intrusion need to be repaired; (v) window walls allowing water intrusion need to be repaired; (vi) granite panels need sealants repaired; (vii) weatherstripping needs to be replaced on exterior doors; (viii) retaining walls need crack repair and recoating; (ix) garage needs redirection of drainage; (x) garage needs the removal of loose or partially detached concrete on overhead surfaces; (xi) soil retaining panels need excavation and reposition to create even ground levels adjacent to the foundation; (xii) fire protection and life safety issues need immediate remediation throughout the building, parking garage, and surrounding area; (xiii) cooling tower drainage needs to brought up to code to prevent dangerous storm drainage; (xiv) machinery room needs new refrigerant gas detection systems; (xv) fire protection on penthouse wall is inadequate; (xvi) clearance needs to be added between air compressors and adjacent equipment; (xvii) all control systems related to the thermostat need to be replaced; (xviii) obsolete pneumatic systems need to be replaced; (xix) fire protection systems, incorrectly located, need to be redesigned; (xx) rusted and corroded AHU systems need to be replaced; (xxi) eye-wash station in the mechanical room needs to be relocated; (xxii) highly flammable items near electrical equipment in mechanical room need to be removed and relocated to a safe location; (xxiii) fire pumps need to be relocated to code; xxiv) jockey pump controller need to be relocated to code; (xxv) excess fuel needs to be stored in a proper enclosure; (xxvi) all root-breached underground piping needs to be replaced; and (xxvii) cracked, deteriorated, or corroded sanitary piping needs to be replaced. ECF No. 71 ¶ 78.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## DISCUSSION

Defendants filed a motion for partial dismissal of Plaintiffs' Third Amended Complaint that makes three arguments. *See* ECF No. 90. First, Defendants assert that Plaintiffs' individual and derivative claims against the N-Y Brothers for breach of fiduciary duty "arising from or relating to the hiring of Defendant, N.F. Mgt., as Manager in 2014 is barred by the statute of limitations" (Counts II and III). *Id.* at 10–11. Second, Defendants assert that these same claims are barred by the doctrines of waiver and estoppel. *Id.* at 11–12. Finally, Defendants seek dismissal of the third-party beneficiary breach of contract claim against Defendant Texas Name Ltd. (Count I). *Id.* 12–13

The Court will analyze each of these arguments in turn.

### 1. Statute of Limitations

Under Texas law, "breach of fiduciary duty claims have a four-year statute of limitations." *Taylor v. Deutsche Bank AG*, No. 3:14-CV-0453-N, 2014 WL 12586180, at *4 (N.D. Tex. Nov. 24, 2014).

Defendants assert that Plaintiffs' individual and derivative claims against the N-Y Brothers for breach of fiduciary duty "arising from or relating to the hiring of Defendant N.F. Mgt., as Manager" is barred by the statute of limitations. ECF No. 90 at 10. Specifically, Defendants allege that Defendant Texas Name Ltd. and all Plaintiffs signed a unanimous written consent dated June

13, 2014 ("Unanimous Written Consent"), which approved engaging Defendant N.F. Mgt. to serve as Manager of the Building. *Id.* at 3. Defendants thus assert that the statute of limitations for any breach of fiduciary duty relating to hiring Defendant N.F. Mgt. began running on June 13, 2014 and had long expired by the time Plaintiffs asserted these claims against the N-Y Brothers for the first time in their Third Amended Complaint dated August 24, 2023. ECF No. 93 at 11.

Plaintiffs respond that the Court cannot rely on the Unanimous Written Consent because it was not attached to Plaintiffs' Third Amended Complaint, and, even if the Court considered a document outside of the pleadings, it fails to address when Plaintiffs learned of the alleged conflict of interest between Defendants N-Y Brothers and N.F. Mgt. ECF No. 92 at 9. Plaintiffs also assert that such a statute of limitations argument is an affirmative defense best resolved at the summary judgment stage. The Court agrees with this last argument.

As a general rule, a statute of limitations defense is "normally an issue that must be resolved through discovery and summary judgment." *Dollery v. Post Acute Med. Mgmt.*, No. 6:18-CV-00104, 2022 WL 161333 LLC, at *1 (S.D. Tex. Jan. 18, 2022) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011)). Defendants "bear the burden of proof on the statute of limitations defense" and dismissal of claims on these grounds is proper at the 12(b)(6) stage "only where it is evident from the [complaint] that the action is barred and the [complaint] fail[s] to raise some basis for tolling." *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021) (citation and internal quotations omitted). Dismissal should be granted "only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011).

Defendants' statute of limitations defense does not support dismissal at this stage of the litigation. In their response brief, Plaintiffs invoke the discovery rule—"an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury"—to assert that the statute of limitation did not begin until Plaintiffs "knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008). Courts have found that the "discovery rule can toll the limitations period" for breach of fiduciary duty claims. *Rotstain v. Trustmark Nat'l Bank*, 3:09-CV-2384-N, 2016 WL 8216509, at *5 (N.D. Tex. Jul. 27, 2016) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998)).

Plaintiffs assert that the fraudulent concealment allegations made in the Third Amended Complaint implicitly invoked the discovery rule. ECF No. 92 at 9. Plaintiffs allege that, in violation of the N-Y Brothers' duties under the Condo Declaration, (i) the N-Y Brothers never held a meeting of the Condo Board; (ii) the Condo Board never called a meeting of the Condo Association; and (iii) the Condo Association never held a vote on any matter. ECF No. 71 ¶ 84. Plaintiffs allege that through such means, the N-Y Brothers fraudulently concealed their wrongdoing to create "the false impression and implied assurance that the [] Building was being ably maintained and repaired by their wholly owned entity, N.F. Mgt." *Id.* ¶ 85. The N-Y Brothers' actions also allegedly deprived Plaintiffs of the opportunity to "inquire formally about the state of the [] Building." *Id.* ¶ 87. The Court agrees that such allegations put Defendants on notice of Plaintiffs' discovery rule argument. *See TIG Ins. Co.*, 521 F.3d at 357 ("The discovery rule need not be specifically pleaded in federal court.").

Accordingly, factual questions regarding when Plaintiffs first discovered—or could have discovered with due diligence—the alleged conflict of interest between Defendants N-Y Brothers

and N.F. Mgt. render resolution of Defendants' statute of limitations defense more appropriate at the summary judgment stage. *See VTX Communs., LLC v. AT&T Inc.*, No. 7:19-cv-00269, 2020 WL 4465968, at *11 (S.D. Tex Aug. 4, 2020) (holding that the court "may await further factual development before ascertaining whether the statute of limitations bars [p]laintiff's claims" because "[d]etermining when a plaintiff has sufficient information for the limitations period to begin is often fact specific and inappropriate for a motion to dismiss pursuant to Rule 12(b)(6)"). This conclusion is particularly justified where, as here, Defendants urge the Court to resolve "statute of limitations issues based on evidence outside the complaint." *Dollery*, 2022 WL 161333 LLC, at *1. In essence, Defendants' arguments "at best raise fact questions not suitable for disposition under Rule 12(b)(6)." *Petro bras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 256 (5th Cir. 2021) (reversing 12(b)(6) dismissal on statute of limitations grounds as the pleadings did not establish as a matter of law that plaintiff had actual or constructive notice of its injury by the date alleged by defendant); *Acad. of Allergy & Asthma in Primary Care*, 988 F.3d at 200 (reversing 12(b)(6) dismissal on statute of limitations grounds because Defendants failed to conclusively establish that Plaintiffs should have discovered their injury through a diligent inquiry).

Accordingly, the Court **DENIES** Defendants' motion to dismiss on statute of limitations grounds.

### 2. Doctrines of Waiver and Estoppel

Defendants also contend that Plaintiffs' individual and derivative claims against the N-Y Brothers for breach of fiduciary duty arising from or relating to the hiring of Defendant, N.F. Mgt., as Manager in 2014 are barred by the doctrines of waiver and estoppel. ECF No. 90 at 11. The Court finds these arguments unpersuasive.

Under Texas law, "waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right…[w]aiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the facts and circumstances." *Bott v. J.F. Shea Co.*, 388 F.3d 530, 533 (5th Cir. 2004). Estoppel requires "(1) a false representation or concealment of material facts made with the intent that another party act on the false representation or silence, (2) the false representation or concealment of material facts was made by a party with knowledge of the facts, (3) the party to whom the representation was made or from whom facts were concealed was without knowledge or the means of knowledge of the real facts, and (4) detrimental reliance." *Tex. Capital Bank N.A. v. Zeidmam*, 779 Fed. App'x. 211, 215 (5th Cir. 2019).

Defendants again urge the Court to consider a document outside of the pleadings—the 2014 Unanimous Written Consent attached to their motion to dismiss—to conclude that Plaintiffs authorized the hiring of Defendant N.F. Mgt. to serve as Manager of the Building, thereby waiving any claim that the N-Y Brothers breached their fiduciary duty "by self-dealing through the hiring of N.F. Mgt. as building manager." ECF No. 90 at 10–11; ECF No. 71 ¶¶ 132, 142. However, even if the Court found it appropriate to review the Unanimous Written Consent at the motion to dismiss stage, Defendants have not alleged conduct that clearly demonstrates Plaintiffs' intent to waive their right to pursue breach of fiduciary duty claims arising from hiring N.F. Mgt. as the Manager of the Building. Nothing in the Third Amended Complaint indicates that Plaintiffs knew of the alleged conflict of interest between Defendants N-Y Brothers and N.F. Mgt. at the time Defendants allege that Plaintiffs agreed to hire N.F. Mgt in 2014. Indeed, as earlier noted, Plaintiffs plead factual allegations that the N-Y Brothers took specific steps—including never holding a meeting of the Condo Board and the Condo Association never voting on any matter—that "created the false

impression and implied assurance" that N.F. Mgt. was a competent Manager. *See* ECF No. 71 ¶¶ 84–88.

In the absence of explicit renunciation of a right, waiver must be based on inference and, in such circumstances, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party 'unequivocally [sic] manifested' its intent to no longer assert its claim." *Wigginton v. Bank of N.Y. Mellon*, No. 3:10–CV–2128–G, 2011 WL 2669071, at *4 (N.D. Tex. Jul. 7, 2011) (citation and internal quotations omitted). Defendants point to no such evidence beyond the Unanimous Written Consent. Again, Defendants offer no explanation as to how such an agreement substantiates that Plaintiffs unequivocally agreed to waive any claims for breach of fiduciary duty upon subsequently discovering evidence of a conflict of interest.

Defendants offer even less explanation as to how the doctrine of estoppel forecloses Plaintiffs from asserting their breach of fiduciary duty claim. As Plaintiffs accurately explain in their response brief, Defendants "do nothing to explain how each element of equitable estoppel is satisfied." ECF No. 92 at 15. Indeed, Defendants fail to identify i) any false representation of material facts made with knowledge of those facts; ii) with the intention that these unidentified false representations be acted on; iii) to a party without means of obtaining knowledge of those facts; or iv) any indication of detrimental reliance on the representations. Defendants have the burden to establish their estoppel claim and they have failed to satisfy it. *Sandoz v. Cingular Wireless, L.L.C.*, 700 Fed. App'x. 317, 322 (5th Cir. 2017) ("The party requesting equitable estoppel bears the burden of establishing that the application of estoppel to the case is warranted.").

For the above reasons, the Court **DENIES** Defendants' motion to dismiss on waiver and estoppel grounds.

### 3.   Third-Party Beneficiary Breach of Contract Claim

Finally, Defendants move for dismissal of Plaintiffs' third-party beneficiary breach of contract claim against Defendant Texas Name Ltd. As described in more detail below, in its Order dated November 7, 2022, the Court dismissed with prejudice Plaintiffs' third-party beneficiary breach of contract claim against Defendant Texas Name Ltd.'s successor-in-interest, TNMI. *See* ECF No. 40. Plaintiff's current claims against Defendant Texas Name Ltd. for third-party beneficiary breach of contract based on the same Property Management Agreement must likewise fail.

In Texas, "[p]arties are presumed to be contracting for themselves only." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan,* 345 F.3d 347, 362 (5th Cir. 2003). Thus, only parties to a contract have standing to sue, unless a third party to the contract can demonstrate that the contract was made for their benefit. *Kona Tech. Corp. v. S. Pacific Transp. Co.,* 225 F.3d 595, 602 (5th Cir. 2000). "To make such a showing, the third party must demonstrate that (1) it was not privy to the written agreement; (2) the contract was actually made for its benefit; and (3) the contracting parties intended for it to benefit by their agreement." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 936 (W.D. Tex. 2015), *aff'd sub nom. AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205 (5th Cir. 2016); *see also Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins.,* 924 F.2d 1347, 1350–51 (5th Cir. 1991).

"The intention to contract or confer a benefit to a third party must be clearly and fully spelled out in order to show the contracting parties entered into the contract directly for the third party's benefit." *First Union Nat'l Bank v. Richmont Cap. Partner*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Utilities Elec. Co.*, 995 S.W.2d 641, 651 (Tex. 1999)). "Furthermore, any intent of the contracting parties to benefit a third-party

is to be derived solely from the language of the contract." *Talman*, 924 F.2d at 1350–51. "The fact that a third party might receive an incidental benefit from a contract does not give that third party a right to enforce the contract." *First Union Nat'l Bank*, 168 S.W.3d at 929 (citing *MCI*, 995 S.W.2d at 651). "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id.* (citing *Dallas Firefighters Ass'n v. Booth Rsch. Grp., Inc.*, 156 S.W.3d 188, 192–93 (Tex. App. —Dallas 2005, pet. denied); *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App. —Dallas 2001, no pet.)). In sum, "'[u]nder Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status.'" *Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A. 3:04–CV–2321P, 2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006) (quoting *Missouri Pac. R.R. Co. v. Harbison–Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994)).

In its November 7, 2022 Order, the Court evaluated Plaintiffs' "third-party beneficiary of contract claims against Defendants [Texas Name Ltd.'s successor-in-interest, TNMI] and N.F. Mgt., both individually and as alter egos and agents of each other, arising out of the Property Management Agreement." ECF No. 40 at 5–6. There, the Court determined that Plaintiffs alleged sufficient facts to demonstrate that they were an intended beneficiary of the Property Management Agreement, allowing their claims against Defendant N.F. Mgt. to proceed.[4] However, the Court dismissed with prejudice Plaintiff's third-party beneficiary breach of contract claims against Defendant Texas Name Ltd.'s successor-in-interest, Defendant TNMI.

---

[4] The Court found, "it is undisputed that Plaintiffs were not privy to the Property Management Agreement. Second, the Property Management Agreement is a service contract, 'one in which one party agrees to provide skills, labor, effort or time to another in exchange for valuable consideration. Maintenance contracts are a type of service contract.' § 6:2. Definition of service contract, 2 Tex. Prac. Guide Bus. Trans. Second. Finally, Plaintiffs were intended beneficiaries of the Agreement, which was entered into for their benefit." ECF No. 40 at 16.

Under Texas law, when a party demonstrates that they are a third-party beneficiary of a contract, the party has standing to sue for breach of that contract. *BAPA Brooklyn 2004, LLC v. Guild Mortg. Co.*, 3:20-cv-254-X-BN, 2021 WL 374984, at \*4 (N.D. Tex. Jan. 11, 2021). A plaintiff suing for breach of contract, however, must still point to a specific provision in the contract that was breached by the defendant. *King v. Wells Fargo Bank, N.A.*, No. 3–11–CV–0945–M–BD, 2012 WL 1205163, at \*2 (N.D. Tex Mar. 20, 2012). Here, Plaintiffs allege that Defendant N.F. Mgt. breached a provision of the Property Management Agreement (article 3.1) that required Defendant N.F. Mgt. to manage the Building "in a manner commensurate with that first-class property managers of real properties of a size, character[,] and quality comparable to the [Building]." ECF No. 71¶ 118. However, Plaintiffs do not identify a specific provision in the Property Management Agreement breached by Defendant Texas Name Ltd. They merely assert, "Texas Name Ltd.'s failure to enforce its contract with N.F. Mgt. caused Plaintiffs' damages." ECF No. 71 ¶ 124. Plaintiffs offer no explanation as to how the Property Management Agreement either explicitly or implicitly obligates Defendant Texas Name Ltd. to force Defendant N.F. Mgt. to perform its contractual management responsibilities. *See Case Corp. v. Hi–Class Business Sys. of America, Inc.*, 184 S.W.3d 760, 769–70 (Tex.App.-Dallas 2005, pet. denied) ("A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform.") Without any identified promise to perform, Plaintiffs have not articulated an actionable breach.

Thus, the Court now **DISMISSES WITHOUT PREJUDICE** the third-party beneficiary breach of contract claim based on the Property Management Agreement against Defendant Texas

Name Ltd.[5] The Court finds that justice requires the Court to grant Defendants leave to amend with respect to this claim.

If Defendants submit an amended complaint, they "must describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim." *Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005) (holding a "a claim on a written contract must either (1) quote relevant contractual language; (2) include a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect"). Further, Defendants must identify "the keys terms" of the contract and "how they were breached." *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1003 (S.D. Tex. 2011). A viable breach of contract claim must allege a "specific act or omission" of Defendant Texas Name Ltd. that "failed to comply with its obligations" under the Property Management Agreement or other contract. *See Hoffman v. L&M Arts,* 774 F. Supp. 2d 826, 837 (N.D. Tex. 2011).

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss (ECF No. 90) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's third-party beneficiary breach of contract claim against Texas Name Ltd., LP is **DISMISSED WITHOUT PREJUDICE**. All other claims remain pending.

---

[5] Defendants also cite to another document outside of the pleadings, an Assignment of Management Agreement and Subordination of Management Fees dated June 27, 2014 ("the Assignment"), that Defendants purport demonstrates that while Defendant Texas Name Ltd. signed the Property Management Agreement, Texas Name Ltd. transferred all of its responsibilities to its successor-in-interest, Defendant TNMI. ECF No. 90 at 13. Defendants argue that the Third Amended Complaint itself acknowledges that TNMI ultimately "assumed the rights and responsibilities of Texas Name Ltd. under the Property Management Agreement." *Id.* Plaintiffs dispute that the Assignment, even if the Court considered it at the pleading stage, transfers Defendant Texas Ltd.'s performance obligations to Defendant TNMI. ECF No. 92 at 16–18. Plaintiffs also retort that the Third Amended Complaint does not concede that Defendant Texas Name Ltd. transferred all of its contractual performance obligations. *Id.* at 19. The Court agrees with Plaintiffs that the resolution of such questions involve factual disputes best resolved at the summary judgement stage.

It is so **ORDERED**.

**SIGNED** this 15th day of August, 2024.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE