**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| L. B. BENON FAMILY LIMITED PARTNERSHIP, BENON MARITAL TRUST, HASSON FAMILY TRUST, GREENS FAMILY LIMITED PARTNERSHIP, INDIVIDUALLY AND ON BEHALF OF MERCANTILE BUILDING COUNCIL OF CO-OWNERS; *Plaintiffs* | § § § § § § § § § | Case No.  SA-21-CA-01115-XR |
| v. | § § § | |
| WELLS FARGO BANK, N.A.,   N.F. MGT., INC.,   TEXAS   NAME MERCANTILE   INVESTMENT,   LLC, TEXAS   NAMED   LIMITED,   L.P., ANUAR NAME YAPUR, JESUS NAME YAPUR,   ANUAR   NAME   YAPUR, EXECUTOR   OF   THE   ESTATE   OF SIMON   NAME   YAPUR,   DECEASED; DANIELA   REYNOSO,   MERCANTILE BUILDING   COUNCIL   OF   CO-OWNERS, (THE   "CONDO   ASSOCIATION")   AS MEMBERS, CO-OWNERS, PARTNERS AND/OR   SHAREHOLDERS   AND   ON BEHALF   OF   ALL   OTHER   SUCH PERSONS   AND/OR   ENTITIES SIMILARLY SITUATED;  DOES 1-100, MERCANTILE   MANAGER   LLC, TEXAS NAME LIMITED, L.P., TEXAS NAME   MERCANTILE   INVESTMENT LLC,  TEXAS NAME LTD., LP, JESUS ANTONIO   NAME   YAPUR,   SIMON NAME YAPUR, *Defendants* | § § § § § § § § § § § § § § § § § § § § § § § § | |

## <u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

On this date, the Court considered Defendant Wells Fargo Bank, N.A.'s Motion for

Summary Judgment (ECF No. 112) and the associated briefing (ECF Nos. 119, 122).  After careful

consideration, the Motion is **GRANTED**, and Plaintiffs' claims against Wells Fargo are **DISMISSED.**

**BACKGROUND**

L.B. Benon Family Limited Partnership, Benon Marital Trust, Hasson Family Trust, and Greens Family Limited Partnership (collectively, "Plaintiffs") bring claims against numerous defendants for, among other things, breach of contract and breach of fiduciary duty. ECF No. 105. This Order concerns Plaintiffs' claims against Wells Fargo, which are for breach of contract.

Together, Plaintiffs and "Texas Name" own a commercial building called the Mercantile Building. ECF No. 112 at 2.[1] The Mercantile Building contains seven "units." *See* ECF No. 112 at 2. Plaintiffs own Unit 1, along with an associated 24.465% interest in the building's "Common Elements." ECF No. 112 at 2; ECF No. 119 at 1. Plaintiffs leased their interest in the building to Wells Fargo. ECF No. 112 at 2; ECF No. 119 at 1. Texas Name owns the remaining six units (Units 2–7) and a combined 75.535% interest in the Common Elements. ECF No. 112 at 2.

The Mercantile Building is governed by a "Condominium Declaration," ECF No. 112-1 at 1–10, and "Condominium Bylaws," ECF No. 112-1 at 12–27. Thereunder, the building's "Common Elements" include both "General Common Elements" and "Limited Common Elements." ECF No. 112-1 at 1–2. "General Common Elements" are things like roofs, "compartments or installations of central services," and other "devises or installations existing for the common use of the Owners." ECF No. 112-1 at 3–4. "Limited Common Elements" are "portions of the Common Elements" "set apart and assigned to and reserved for the exclusive use

---

[1] Plaintiffs assert that several individual defendants in this case are the "beneficial owners" of the portion of the Mercantile Building not owned by Plaintiffs. ECF No. 119 at 1–2. These individual defendants purportedly own their interests through shell companies, including the corporate defendants in this case. *Id.* For purposes of this Order, the distinction is immaterial. So for simplicity the Court refers to Plaintiffs' fellow owners jointly as "Texas Name."

2

of" a particular Unit.  ECF No. 112-1 at 4.  Specifically, the Limited Common Elements are drive-through banking lanes as well as some nameplates and signs.  *Id.*  The drive-through lanes are associated with Unit 1.  *Id.*  The nameplates and signs are associated with Unit 1 insofar as they identify the owner or occupant of Unit 1 and are associated with Unit 2 insofar as they identify the owner or occupant of Unit 2.  *Id.*

The Bylaws also provide that a "Manager" will administer the daily operations of the Mercantile Building.  ECF No. 112-1 at 13–14.  At all times relevant to this case, Defendant N.F. Mgt. was the Manager.  ECF No. 112 at 2; ECF No. 119 at 3.

The Manager is responsible for "[o]peration, care, upkeep[,] and maintenance of the [General] Common Elements."  ECF No. 112-1 at 13.  The associated expenses are "charged to all the Owners as a Common Expense, except to the extent that the" expenses "are necessitated by the negligence, misuse or neglect of an Owner, in which case such expense shall be charged to such owner."  ECF No. 112-1 at 17.[2]  "Common Expenses" are apportioned among the Owners based on their percentage-ownership of the Common Elements.  ECF No. 112-1 at 4.  And the applicable lease agreement requires Wells Fargo to pay Plaintiffs' share of these expenses.  ECF No. 112-2 at 13 (requiring Wells Fargo to pay "any assessments," "charges, fees or other obligations which are due pursuant to the Condominium Declaration or arising from or relating to the condominium regime").  So, because Wells Fargo has a 24.465% interest in the Common Elements, it is responsible for 24.465% of the Common Expenses assessed by the Manager.  In theory, then, it pays 24.465% of the costs of operating and maintaining the General Common Elements.  By contrast, "the care, upkeep and maintenance of the *Limited* Common Elements is

---

[2] Plaintiffs do not argue that any of the expenses here "are necessitated by" Wells Fargo's "negligence, misuse or neglect."  *See* ECF No. 119.

the responsibility of the Owner of each Unit to which such Limited Common Elements are appurtenant." ECF No. 112-1 at 13 (emphasis added).

Plaintiffs allege that because of Defendants' acts and/or omissions, the Mercantile Building needs substantial maintenance work. From Wells Fargo, Plaintiffs seek "$44,279,927 in required maintenance expenses," "which Plaintiffs deem necessary" "for the operation and maintenance of the Common Elements and Limited Common Elements of the Mercantile Building." ECF No. 105 at 28 ¶ 119.

Plaintiffs initially argued that Section 11(a) of the applicable Lease Agreement required Wells Fargo to pay for the Common Elements' maintenance. *See* ECF No. 54. On its face, "Section 11(a) requires Wells Fargo to make any required repairs or maintenance of the [b]uilding's common elements." *L.B. Benon Family Ltd. P'ship v. Wells Fargo Bank, N.A.*, No. SA-21-CV-01115-XR, 2023 WL 3010203, at *6 (W.D. Tex. Apr. 19, 2023). But the Court has already found that "Section 11(a) mandates that Wells Fargo repair and maintain the common elements only to the extent that the Declaration and Bylaws require." *Id.* "[T]he Bylaws provide that maintenance and upkeep of the common elements shall be made by the Building Manager and subsequently charged to all the Owners as a Common Expense." *Id.* As such, Section 11(a) imposes "a payment obligation" but not a "performance obligation [for Wells Fargo] to undertake its own repair and maintenance of the common elements." *Id.* at *5. Plaintiffs did not claim that Wells Fargo had failed to pay its proportionate share of the Common Expenses charged by the Manager. *Id.* at *6. So the Court dismissed "Plaintiffs' breach of contract claim against Wells Fargo for failure to repair and maintain" the Common Elements, at least to the extent that the damages Plaintiffs claimed were "not caused by [Wells Fargo's] own negligence or misuse." *Id.*

Just over a month later, in June 2023, Plaintiffs and Wells Fargo stipulated to the dismissal without prejudice of the remaining claims against Wells Fargo.  ECF No. 57.

In July 2025, Plaintiffs filed a Fourth Amended Complaint, renaming Wells Fargo as a Defendant.  ECF No. 105.  They now allege that Wells Fargo breached a different section of the Lease Agreement—Section 8(a)(vi).  ECF No. 105 at 27–28.  As further set out below, Section 8(a)(vi) requires Wells Fargo to pay certain sums Plaintiffs deem necessary "due to the non-payment by any other Owner" of "expenses or assessments for the operation and maintenance of the Common Elements or the Limited Common Elements."  ECF No. 112-2 at 12–13.

Wells Fargo filed the instant Motion for Summary Judgment, arguing that Section 8(a)(vi) only applies when the Manager has assessed expenses against another owner and that owner has failed to pay.  ECF No. 112.  The Motion is now ripe for consideration.  *See* ECF Nos. 119, 122.

## DISCUSSION

### I.      Summary Judgment Standard

To be entitled to summary judgment, a movant must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show summary judgment is inappropriate.  *See Fields v. City of S. Hou.*, 922 F.2d 1183, 1187 (5th Cir.

1991).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  Nor is a mere "scintilla of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could find for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and it must review all facts in the light most favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Law Governing Contract Interpretation

This Motion concerns the meaning of a lease agreement.  "When a contract's meaning is disputed, [a court's] primary objective is to ascertain and give effect to the parties' intent as

expressed in the instrument." *Bd. of Regents of Univ. of Tex. Sys. v. IDEXX Labs., Inc.*, 691 S.W.3d 438, 442 (Tex. 2024) (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018)). "[W]ords must be construed in the context in which they are used," and the relevant context includes "the circumstances present when the contract was entered." *Id.* (quoting *URI*, 543 S.W.3d at 764). A court must "determine, objectively, what an ordinary person using th[e] words under the circumstances in which they are used would understand them to mean." *Id.* (same).

Texas courts "construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

### III.　　The Relevant Provisions

Section 8(a)(vi) of the Lease Agreement provides:

> (a) Lessee shall pay, when due, before any fine, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for non-payment thereof: . . . (vi) any sums which Lessor shall, in its sole judgment, be required to, or deem it necessary to, pay due to the non-payment by any other Owner . . . of any expenses or assessments for the operation and maintenance of the Common Elements or the Limited Common Elements, including, without limitation, maintenance, insurance, utilities, taxes, repairs and alterations, provided that, in the event Lessor makes any payments under this subparagraph (vi), then Lessee shall be subrogated to Lessor's lien or rights to a lien on the Unit owned by such non-paying Owner, and Lessor further agrees to remit to Lessee any sums for which Lessor may be reimbursed for such payments by Lessor described in this subparagraph (vi).

ECF No. 112-2 at 12–13. This Section only requires Wells Fargo to pay, "when due," expenses that Plaintiffs determine necessary "due to the non-payment by any other Owner . . . of any

expenses or assessments for the operation and maintenance of the Common Elements or the Limited Common Elements." ECF No. 112-2 at 12–13.

The Bylaws provide, in relevant part:

> All maintenance, replacement of and repairs to the General Common Elements . . . , the painting and decorating of the exterior walls and doors of the improvements and the washing of exterior glass, the maintenance of the landscaping (interior and exterior) and the maintenance and upkeep of the common drives and parking areas shall be made by the Manager for the account of all of the Owners and shall be charged to all the Owners as a Common Expense, except to the extent that the same are necessitated by the negligence, misuse or neglect of an Owner, in which case such expense shall be charged to such Owner.

ECF No. 112-1 at 17. Plaintiffs have pointed to no part of the Declaration or Bylaws allowing *them* to maintain, repair, etc. the General Common Elements, especially without the consent of the Manager and/or the other owners. *Cf.* ECF No. 112-1 at 17–18 (requiring consent of the Manager and/or other owners to "make structural alterations or modifications" to the Common Elements and to "paint or decorate any portion of" the Common Elements).

The Declaration and Bylaws were executed before the Lease Agreement, ECF No. 112-1 at 1, 27; ECF No. 112-2 at 4, and they provide important context when interpreting the Lease Agreement. Indeed, the Lease Agreement "explicit[ly] incorporate[es]" them by reference. *L.B. Benon Family Ltd. P'ship*, 2023 WL 3010203, at *6.

## IV.    Analysis

Section 8(a)(vi) does not apply here, because "expenses or assessments" cannot be "due to the non-payment" of another owner if the Manager never charged the other owner for such "expenses or assessments."

As noted above, the Manager "shall" make "[a]ll maintenance, replacement of and repairs to the General Common Elements." ECF No. 112-1 at 17. Plaintiffs essentially claim that the Manager did not live up to its obligation to provide necessary maintenance. Naturally, the owners

did not pay for maintenance that did not occur.  So on Plaintiffs' theory, the failure to maintain the building was "due to" the other owners' non-payment of these uncharged expenses.  But—again— only the Manager could perform the relevant maintenance.  ECF No. 112-1 at 17.  The owners did not have the authority under the Declaration and Bylaws to simply pay for it in spite of the Manager.  So it is inaccurate to say that the purported lack of maintenance was "due to" the owner's non-payment, as opposed to the Manager's failure to provide maintenance.

Relatedly, without action by the Manager, Plaintiffs cannot even *use* the money they seek to repair and maintain the General Common Elements, because—again—they lack authority to do so.  It would make little sense for Section 8(a)(vi) to require Wells Fargo to pay Plaintiffs money to do something they cannot do.

Also, Section 8(a) only requires Wells Fargo to pay sums, including those under Subsection (vi), "when due, before any fine, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for non-payment thereof."  ECF No. 112-2 at 12–13.  A sum does not become "due" in the sense that there may be some penalty for non-payment simply because Plaintiffs decide the sum is necessary.  And Section 8(a)'s other subsections concern payment of taxes, utilities, and assessments by the Manager—all things assessed and charged by some other party.  These factors suggest that Section 8(a)(vi) does not allow Plaintiffs to simply assert that the Manager should have assessed certain expenses and demand Wells Fargo pay those expenses.

And even if Section 8(a)(vi) *did* allow Plaintiffs to do that, it would still only require Wells Fargo to pay sums arising from *another Owner's* non-payment.  *Id.*  Plaintiffs could not use Section 8(a)(vi) to force Wells Fargo to pay expenses already associated with Unit 1.  Most notably, they could not demand that Wells Fargo pay its 24.465% share of the relevant expenses,

because that share would not arise from *another Owner's* non-payment; even under Plaintiffs' theory, it would arise from *Wells Fargo's* non-payment. And the Court has already held that Section 11(a) does not require Wells Fargo to pay expenses to maintain and repair Common Elements if the Manager never assessed such expenses. *See L.B. Benon Family Ltd. P'ship*, 2023 WL 3010203. The effect of Plaintiffs' reading, then, would be that Plaintiffs could force Wells Fargo to pay the exact inverse of its share of the relevant expenses. They could demand 75.535% of unassessed expenses that they deem necessary. But Wells Fargo would have no obligation to pay the remaining 24.465%, even though that is the share that is actually associated with its interest in the property. The Court declines to adopt such an illogical reading. Section 8(a)(vi) does not allow Plaintiffs to force Wells Fargo to pay for General-Common-Element maintenance expenses that the Manager never charged.

Because the parties' briefing focuses on the General Common Elements, much of the analysis above is primarily relevant to those, as opposed to the Limited Common Elements. But Section 8(a)(vi) also does not allow Plaintiffs to demand that Wells Fargo pay for any purported failure to maintain Limited Common Elements in this case.

As noted above, there are two categories of Limited Common Elements: drive-through banking lanes and some nameplates and signs. ECF No. 112-1 at 4. The drive-through lanes are associated with Unit 1. *Id.* The nameplates and signs are associated partially with Unit 1 and partially with Unit 2. *Id.*

The Limited Common Elements associated with Unit 1 do not fall under Section 8(a)(vi) because "the care, upkeep and maintenance of the[m] . . . is [already] the responsibility of" Plaintiffs and Wells Fargo. ECF No. 112-1 at 13. So any failure to maintain the Limited Common Elements associated with Unit 1 does not arise from *another Owner's* non-payment.

As a practical matter, the Court doubts that the Limited Common Elements associated with other Units—some nameplates and signs—comprise much of the nearly $45 million Plaintiffs seek. Still, Section 8(a)(vi) does not allow Plaintiffs to recover from Wells Fargo for any purported failure to maintain those elements here. Like the General Common Elements, Plaintiffs seemingly have no authority to unilaterally repair or maintain the Limited Common Elements associated with other Units. The Court declines to read Section 8(a)(vi) to require Wells Fargo to pay for Plaintiffs to repair and maintain something they apparently lack the authority to repair and maintain.

Ultimately, Plaintiffs want to use Section 8(a)(vi) to "make Wells Fargo responsible, as only a partial owner, for all repairs and maintenance of the [Common Elements], even if they were not due to Wells Fargo's own negligence or misuse." *L.B. Benon Family Ltd. P'ship*, 2023 WL 3010203, at *6. That reading is directly at odds with the Declaration and Bylaws, and Section 8(a)(vi)'s language does not support it.

### CONCLUSION

As such, Wells Fargo's Motion for Summary Judgment (ECF No. 112) is **GRANTED.** Plaintiffs' claims against Wells Fargo are **DISMISSED.**

It is so **ORDERED**.

**SIGNED** this April 23, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE